J-S27033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KIMBERLY M. HAMILTON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SCOTT E. HAMILTON | : | |
| | : | |
| Appellant | : | No. 1219 EDA 2022 |

Appeal from the Order Entered April 11, 2022
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2018-FC-0679

BEFORE: STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED NOVEMBER 10, 2022**

Scott E. Hamilton ("Father") appeals from the order denying his petition for shared physical custody of the parties' minor son, D.H. ("Child"), born in 2014. We affirm.

The underlying custody matter commenced in May 2018, following the marital separation of Father and Kimberly M. Hamilton ("Mother"). In 2018, the trial court awarded shared legal custody of Child, with primary physical custody to Mother, and partial physical custody to Father on alternating weekends and alternating Tuesdays overnight. Since 2018, the parties have repeatedly filed petitions to modify custody. However, despite numerous custody orders, Mother has retained primary physical custody of Child throughout these proceedings.

Father is a pediatric nurse anesthetist at Lehigh Valley Hospital who works three eight-hour shifts per week from 7:00 a.m. to 3:30 p.m., and two

twelve-hour shifts per week from 7:00 a.m. to 7:30 p.m. *See* N.T., 4/8/22, at 6-7. Mother works weekdays from 7:30 a.m. to 4 p.m. She works in the office three days per week and works from home two days per week. *Id*. at 97. After their separation, Father moved to and currently lives in Coopersburg, Pennsylvania, which is a driving distance of twenty-three minutes from the school Child attends. *Id*. at 4-6. Mother lives in the marital home in Breinigsville, Pennsylvania, which is approximately one mile from the school Child attends. *Id*. at 96-97, 103. Since Child's birth, Mother has been the primary caregiver. *Id*. at 111-12.

On March 4, 2020, Father filed a petition for modification of the existing custody order. On August 27, 2020, a conciliator conducted a conference on the petition and prepared a proposed order which provided the following partial custody award:

> a. Father shall have alternating weekends with [Child] from 4:00 p.m. on Friday until 7:00 p.m. on Sunday during the school year. During the summer when school is not in session, the return of [Child] shall be at 9:00 p.m.
>
> b. During the school year, Father shall have dinner visits with [Child] on Tuesday and Thursday from after school until 8:00 p.m. Father shall be responsible for providing the transportation.
>
> c. Since Father has indicated he is unable to exercise his weekday physical custody during the summer, the schedule during the summer shall be as follows:
>
>> i. Father shall have [Child] each Tuesday from 4:00 p.m. or after daycare or camp, overnight, until

- 2 -

> Wednesday at 9:00 a.m. when [Child] returns to Mother or daycare/camp. This will be based on when daycare or camp or Mother's work begins.
>
> ii. Additionally, Father shall have a Thursday Dinner visit from 4:00 p.m. until 8:00 p.m. on alternating Thursday, before his weekends, and on alternating Thursday (before Mother's weekends) from 4:00 p.m. on Thursday, overnight, until 9:00 a.m. on Friday.

> d. Father may have additional time as the parties agree.

Proposed Custody Order, 8/27/20, at ¶3. Mother filed exceptions to the proposed order. On February 8, 2021, the trial court issued an order denying Mother's exceptions and adopting the August 27, 2020 proposed custody order.

On August 11, 2021, Father filed a petition for modification of the February 8, 2021 custody order, wherein he requested equally shared physical custody. Specifically, he requested that he and Mother be awarded custody on an alternating weekly basis or, alternatively, that the current custodial periods he exercises in the evenings for dinner with Child be changed to overnights. Mother filed an answer and counterclaim for modification of the February 8, 2021 custody order. In her counterclaim, Mother sought minor alterations regarding when vacation time may be used, including that Mother has Child during his winter recess on even years and Father has Child during the recess on odd years (excluding holiday times), and that the non-custodial

parent is limited to one phone call per day, and that phone calls only occur on the weekend.

The trial court held hearings on April 7 and 8, 2022. Father and Mother testified during the hearing. Additionally, Father presented two witnesses: Jo Hamilton, Child's paternal grandmother; and Maura Dougherty, Father's girlfriend with whom he lives. Mother presented four witnesses: David and Deborah Hinkel, husband and wife who are Mother's neighbors; and Lance and Terri Fredericks, Child's maternal grandparents. Child, who was then seven years old and in second grade, was not interviewed.

The testimonial and documentary evidence revealed that during the pendency of the custody proceedings Child has experienced various behavioral and educational issues. *See* N.T., 4/8/22, at 25-32; Father's Exhibits F7-F9. Child has displayed violent behaviors towards other students, intentionally urinated in the corner of the classroom, and made suicidal comments at school. *Id*. Furthermore, Child's academic performance has been declining. *Id*. In first grade, Child was in the twenty-fifth percentile for reading; however, Child dropped to the tenth percentile in second grade. *Id*. at 26-27. To address these concerns, Child began seeing a play therapist, Kathleen Hancock. *Id*. at 107. Recently, Father and Mother have been considering other potential therapy options for Child. *Id*. at 28, 111.

On April 11, 2022, the trial court entered an order denying Father's petition for equally shared physical custody. The order granted Mother's request for a provision to be added that vacation time with Child is during Child's time off from school, that the non-custodial parent may only have one telephone call per day with Child on weekends and denied her remaining requests.[1] The order awarded Father partial physical custody as follows:

a. During the school year, on alternating weekends from Friday at 4:00 PM until Sunday at 7:00 PM and on every Tuesday and Thursday from after school until 8:00 PM. Father shall provide all transportation for these periods of partial physical custody.

b. During the summer when school is not in session, on alternating weekends Friday at 4:00 PM until Sunday at 9:00 PM and on every Tuesday and Thursday from 4:00 PM or after daycare/camp until 8:00 PM.

Order, 4/11/22, at ¶3.

Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion directing this Court to its rationale set forth in its opinion accompanying the April 11, 2022 order.[2]

---

[1] Father does not challenge the trial court's decision to grant in part and, deny in part, Mother's petition. Rather, Father's issues pertain solely to the trial court's decision to deny his request for shared physical custody.

[2] In its Rule 1925(a) opinion, the trial court mistakenly references the date of the order as October 24, 2013. As referenced *supra*, the custody order that Father appeals from is dated April 11, 2022.

Father presents the following questions for our review:

1. Whether the lower court committed an error of law and abuse of discretion awarding Mother primary physical custody and denying Father shared physical custody because it failed to appropriately weigh Mother's conduct in purposely limiting Father's custodial time in performing the parental duties as required by 23 Pa.C.S.A. § 5328(a)(3) in light of the facts and evidence of record.

2. Whether the lower court committed an error of law and abuse of discretion awarding Mother primary physical custody and denying Father shared physical custody because it focused on Father's prior conduct but identified no nexus to [Child's] present best interest and therefore failed to appropriately weigh the need for stability and continuity as required by 23 Pa.C.S.A. § 5328(a)(4) in light of the facts and evidence of record.

3. Whether the lower court committed an error of law and abuse of discretion awarding Mother primary physical custody and denying Father shared physical custody because it did not properly weigh Mother's refusal to share information with Father and therefore failed to appropriately weigh which parent is more likely to attend to the needs of [Child] as required by 23 Pa.C.S.A. § 5328(a)(10) in light of the facts and evidence of record.

Father's Brief at 8.

We address Father's claims in accordance with the following scope and standard of review:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's

deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted).

Further:

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

The test is whether the evidence of record supports the trial court's conclusions.

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (internal citations omitted).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (quoting *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004)).

Child custody actions are governed by the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321-5340.  Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order."  ***J.R.M. v. J.E.A.****,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).  This statutory section provides as follows.

**§ 5328.  Factors to consider when awarding custody.**

(a)  *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

We have further explained:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally,

"section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . ..

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 ([Pa.] 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id*.

*A.V.*, 87 A.3d at 822-23.

In his first issue, Father challenges the trial court's ruling with respect to section 5328(a)(3), which required the court to consider the parental duties performed by each party on behalf of Child.

Father argues that Mother purposely limited Father's custodial time with Child and attempted to marginalize his role in Child's life. Father references Mother's counterclaim which requested the court to limit Father's custodial time with Child, and his telephone calls with Child to once per day on his noncustodial weekends. Father also argues that Mother obstructs Father's attempts to obtain additional time with Child, schedule vacations with Child, and participate in planning Child's birthday party. Father states that Mother argues and degrades Father in Child's presence, and that Mother is "rigid, inflexible, and uncooperative. . . .." Father's Brief at 18.

The trial court considered Father's first issue and explained that section 5328(a)(3) favored Mother because "Mother has been the primary caretaker of [Child] for years." Trial Court Opinion, 4/11/22, at 3.

Our review of the record reveals that Mother has been exceedingly flexible with Father and encourages contact between Father and Child. Mother testified to various instances where she worked with Father to alter the custody schedule and ensure that Father spends time with Child. For example, Mother testified that, in June 2021, Father contacted her because Father's schedule did not allow him to accommodate his custodial time periods under the existing custody order. *See* N.T., 4/8/22, at 129-30. Mother proposed a solution where during the summer every Tuesday night would be an overnight and the Thursdays preceding Mother's weekend would be an overnight, thus accommodating Father's inability to follow the specific provisions of the custody order, while still maintaining the general integrity of the order. *Id*. at 130-32. At the hearing, Father agreed that Mother accommodated him during this time:

> Q: You would agree with me that just prior to June of – or during June of 2021, which was eight months later after your schedule became fixed, you reached out to mom and said, "I can't do the court order as it is." Do you recall that?
>
> A: I believe we were going back and forth for court prior to that. And that's when the final petition was made, yes.
>
> Q: Okay. You recall that you told mom you couldn't do the schedule; right?

A: Correct.

\* \* \* \*

Q: Okay. And did [Mother] agree to change the schedule?

A: Correct.

Q: Okay. So [Mother] accommodated your request for a change?

A: Correct.

*Id*. at 74-75. Furthermore, Father's vacation plans with Child were disrupted in 2020 because Child's school moved its start date to a week before Labor Day. *Id*. at 128-29. Mother testified, "I didn't want [Father] to lose out on the time" with Child, so Mother permitted Father to carry over that week of time with Child into the following year. *Id*.

Similarly, Mother testified that, since March 2020, there were at least ten occasions where Father was unable to timely pick Child up following his workday. *Id*. at 102-03. In those instances, Mother retrieved Child and had him ready when Father arrived. *Id*. Mother also testified that, on occasion, Child accompanies her to retrieve prescriptions from the hospital where Father works, and she will "reach out to him" to see if he is available to see Child. *Id*. at 125-26. Nothing in the record indicates that Mother has attempted to isolate Father from Child. Father's argument that Mother seeks to limit his custodial time by seeking a more restrictive custody order is unpersuasive because both parents have filed petitions that would limit the other's time. As

we discern no abuse of discretion by the trial court in determining that section 5328(a)(3) weighs in Mother's favor, Father's first issue merits no relief.

In his second issue, Father challenges the trial court's ruling with respect to section 5328(a)(4), which requires the court to consider the need for stability and continuity in the child's education, family life, and community life.

Father argues that this factor should favor him because the trial court focused on events that occurred immediately before their marital separation and did not address the evidence of Child's current struggles which have developed while Mother was the primary custodian. Father argues that Child's "conduct has deteriorated" and "Mother refuses to seek help other than play therapy." *Id*. at 23. In essence, Father contends that the trial court "focused on Father's past without analyzing [his] current conduct and [Child's] struggles." *Id*. at 24. Father asserts that the court improperly weighed this factor in favor of Mother "despite a custodial arrangement which has failed [Child] and his best interests." *Id*.

The trial court considered Father's second issue and explained that section 5328(a)(4) favored Mother because:

> Mother has been consistently providing stability and continuity for [Child]. Some of the things to which Mother testified, such as Father leaving for indefinite periods of time without communicating with her about where he was going or when he was returning, suggest that he is somewhat less reliable than Mother.

Trial Court Opinion, 4/11/22, at 3.

Based on our review, we discern no abuse of discretion by the trial court in determining that section 5328(a)(4) favored Mother. Mother testified that she has a flexible schedule, and she has the ability to work from home two days a week. *See* N.T., 4/8/22, at 97-98. Similarly, during the pandemic she was able to work from home five days per week and provided Child with a workspace to learn remotely. *Id*. 101-02. Father's schedule is not nearly as flexible. As explained above, Mother testified to at least ten instances where Father could not timely retrieve Child following his workday. *Id*. at 45-46, 102-03. Additionally, Mother has encouraged play therapy, but also testified that at the time of trial, Mother and Father were attempting to schedule a meeting with another mental health expert for Child. *Id*. at 178-79.

Mother also lives in the same home that Child has known since his birth, and the home is approximately one mile away from the school he attends. *Id*. at 103-05. In addition, Mother's witnesses all testified that Child enjoys his time at Mother's home, that Child has lots of friends in the neighborhood, and that Child has a wonderful relationship with Mother. *See* N.T. (Morning Session), 4/7/22, at 30-31, 45-46; N.T. (Afternoon Session), 4/7/22, at 5-6; 10.

Overall, the record reveals that Mother has provided a consistent and stable environment for Child. Although Father argues that the trial court did not consider Child's ongoing behavioral concerns and academic challenges,

nothing in the record indicates that Child's issues are related to Mother having primary physical custody. Therefore, as the record supports the trial court's determination, we conclude that Father's second issue is without merit.[3]

In his third issue, Father challenges the trial court's ruling with respect to section 5328(a)(10), which required the court to consider which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the child.

Father argues that this factor should favor him because Mother refuses to cooperate with him in making appointments and sharing information about Child. Father states that he has scheduled doctor's appointments for Child, that Mother does not communicate with him regarding dates and times of appointments, and Mother does not communicate with him regarding medical and educational decisions for Child. Father claims that Mother did not communicate with him regarding Child's bedwetting and Child returning to in-person schooling full-time for the 2020-2021 school year. Father contends that Mother's "continuous failure to cooperate, or even consult, with Father regarding [Child's] medical and educational decisions . . . when intertwined

---

[3] To the extent that Father challenges the trial court's lack of analysis regarding section 5328(a)(4), the trial court was not required to provide an extensive explanation. *See A.V.*, 87 A.3d at 822-23 (holding that "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations").

with Mother's attempts to limit Father's time with [Child] . . . points to an effort to limit Father's parenting to [Child's] detriment." Father's Brief at 26.

The trial court considered Father's third issue and explained that section 5328(a)(10) favored Mother because:

Mother testified that she sets up all the doctor appointments and Father participates to some degree but does not respond to her communications about these things.

Trial Court Opinion, 4/11/22, at 3.

Our review of the record reveals that Mother has cooperated with Father and informs Father of the needs and appointments for Child. **See** Mother's Exhibits 3-11, 13-17. Mother testified, "I understand [Father] wants to be included and I want him to be there, but his schedule is such that it's difficult to arrange an appointment at a time where we can both be there." N.T., 4/8/22, at 120. Mother explained that she therefore schedules an appointment to secure the date and time, and then informs Father of the appointment. **Id**. According to Mother, if Father has any issues, "we'll change it. That's fine." **Id**. Mother provided an email exchange between her and Father that clearly demonstrates that she communicated with Father regarding Child returning to in-person schooling full-time for the 2020-2021 school year. **See** Mother's Exhibit 5. The parties discussed the plan, and in his final email on the topic Father states, "I thought I responded that I was in agreement," and confirmed the previously discussed arrangement for Child's

return to in-person schooling. *Id*. Mother also provided communications to Father regarding Child's bedwetting which directly contradicts Father's position. *See* Mother's Exhibit 4. The record also shows that Mother continuously provides for Child's physical, emotional, developmental, educational, and special needs, and regularly attempts to include Father. Thus, as the record supports the trial court's determination regarding section 5328(a)(10), Father's final issue merits no relief.

In sum, Father's arguments essentially ask this Court to override the credibility determinations of the trial court, reassess the evidence to credit Father's position, and re-weigh the factors to arrive at a different outcome. This we cannot do. It is axiomatic that the trial court is the arbiter of credibility, and this Court cannot interfere with the trial court's careful and thorough consideration of the best interests of children with findings that are supported by the record. *See A.V.*, 87 A.3d at 820. As the testimonial and documentary evidence support the trial court's determinations regarding the custody factors, we affirm its custody order.

Order affirmed.

Judge Stabile joins in this decision.

Judge Nichols concurs in the result.

*Judgment Entered.*

_____

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date:* _11/10/2022_